IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                                  Case No. 1:24-MJ-428

DASSE MADOU,

Defendant.

**AFFIDAVIT IN SUPPORT OF A
CRIMINAL COMPLAINT AND WARRANT**

I, Benjamin R. Tomasiello, being duly sworn, state the following:

1.      Your affiant has been a police officer with the United States Park Police ("USPP")

for over 15 years (January 2009). Your affiant has worked on the parkways managed by the USPP

for much of his career. Your affiant has handled hundreds of vehicle crashes, ranging from minor

property damage to multiple vehicle fatalities. Your affiant has been a crash reconstructionist for

10 years and has handled over 25 fatal or serious personal injury crashes where a reconstruction

was completed. Your affiant has assisted on 25 or more fatal or serious personal injury crashes.

Your affiant has imaged 50-75 electronic device recorders for crash investigations and is trained

in interpreting the collected data to see if it is relevant to the investigation.

2.      This affidavit is submitted in support of a criminal complaint and arrest warrant,

charging that on or about May 1, 2024, while driving on the George Washington Memorial

Parkway ("GWMP"), which is in the special maritime and territorial jurisdiction of the United

States and within the Eastern District of Virginia, DASSE MADOU ("MADOU"), operated a

vehicle at a speed in excess of the speed limit, in violation of 36 C.F.R. § 4.21(c); committed

reckless driving, in violation of 36 C.F.R. § 4.2, adopting Virginia Code § 46.2-862; and committed assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).

3.      The facts and information contained in this affidavit are based upon my training and experience, personal knowledge, and observations during this investigation, as well as the observations of other officers involved in this investigation.  This affidavit contains information necessary to support probable cause, but it is not intended to include each and every fact and matter observed by me or known to the government.

**SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE**

4.      On or about May 1, 2024, at approximately 1642 hours, USPP officers responded to a crash involving two motor vehicles which occurred in the northbound lanes of the GWMP near the intersection with Marina Drive/Daingerfield Island, which is in the special maritime and territorial jurisdiction of the United States within the Eastern District of Virginia.

5.      Northbound GWMP is a two-lane asphalt roadway with a median on the left and a shoulder and a grassy area on the right. The left and right lanes are separated by a white dashed center line. The left lane consists of an edge line that is yellow in color, followed by a concrete mountable curb. Adjacent to that is a grassy shoulder and wide median area which separates the northbound lanes from the southbound lanes. The right lane consists of a white edge line which delineates the roadway from a right turn lane to Marina Drive/Dangerfield Island.

6.      The speed limit on the northbound GWMP at and around the intersection with Marina Drive is 40 miles per hour.

7.      Prior to the crash, MADOU was traveling northbound on the GWMP, driving a black BMW sedan.

8.      Witness 1 ("W-1") was also traveling northbound on the GWMP in the left lane. W-1 observed MADOU approaching from the rear at a high rate of speed. W-1 reported that as he and MADOU approached Marina Drive/Dangerfield Island, MADOU was tailgating W-1.

9.      Prior to the crash, Victim 1 ("V-1"), driving a silver Honda Minivan, was traveling on Marina Drive westbound towards the intersection with the GWMP, intending to cross the northbound lanes of the GWMP to reach the median, from which he would turn left into the southbound lanes of the GWMP. Minor Victim 1 ("MV-1") was a passenger in V-1's vehicle.

10.     As V-1 entered the intersection from Marina Drive/Dangerfield Island, MADOU moved to the right lane to pass W-1, and collided with V-1.

11.     MADOU's vehicle sustained significant front-end damage that was focused on the right front corner of the vehicle. The right front corner of the vehicle was pushed backward, and the hood was crumpled. MADOU's vehicle also suffered damage along the right side of the vehicle, including dents and a broken front passenger window. The windshield was also shattered.

12.     V-1's vehicle was overturned and suffered significant front end and left side damage. The front bumper and grill were missing when V-1's vehicle came to a rest, and the engine was ejected. The vehicle's driver door left front and rear quarter panels were damaged. The left rear quarter panel had an imprint of MADOU's vehicle's rim and tire. V-1's vehicle's windshield was shattered and the hood was damaged.

13.     V-1 sustained numerous injuries and was transported to the hospital by ambulance. V-1 is seventy-nine years old. His diagnoses included a sternal fracture which required surgery, multiple rib fractures, a collapsed lung, kidney laceration, renal failure, and respiratory failure. V-1 was hospitalized in the intensive care unit for several weeks, and then spent additional time in

an inpatient rehabilitation facility before he could be released from care. He continues to receive outpatient treatment for his injuries.

14.     On July 11, 2024, the Event Data Recorder ("EDR") Airbag Control Module ("ACM") of MADOU's vehicle was imaged. An image of the ACM was successful, with one event being recorded. I confirmed that the data collected is from the crash in question by comparing the ignition cycle at the time of download and the ignition cycle at the time of the crash.

15.     Analysis of the EDR/ACM in MADOU's vehicle determined that five seconds before impact with V-1, MADOU was driving 88 miles per hour. His speed at the time of impact with V-1's vehicle was 85 miles per hour.

[Conclusion and Signatures on Next Page]

## CONCLUSION

16.     Based on the forgoing, I submit there is probable cause to believe that on or about May 1, 2024, while driving on the GWMP, which is in the special maritime and territorial jurisdiction of the United States, within the Eastern District of Virginia, MADOU operated a vehicle at a speed in excess of the speed limit, in violation of 36 C.F.R. § 4.21(c); committed reckless driving by operating a motor vehicle on a highway at a speed of 20 miles per hour or more in excess of the applicable maximum speed limit and in excess of 85 miles per hour, in violation of 36 C.F.R. § 4.2, adopting Virginia Code § 46.2-862; and committed assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).

Respectfully submitted,

BENJAMIN TOMASIELLO   Digitally signed by BENJAMIN TOMASIELLO
Date: 2024.10.24 06:54:28 -04'00'

Sergeant Benjamin Tomasiello
United States Park Police

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on October 24, 2024.

_William E. Fitzpatrick_

The Honorable William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia

5